Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VINCENT LAVANGA,<br><br>                              Plaintiff,<br><br>            vs.<br><br>AVANTAX, INC., GEORGANNE PROCTOR, MARK ERNST, CAROL HAYLES, KAN KOTECHA, RICK LEAMAN, TINA PERRY, KARTHIK RAO, JANA SCHREUDER, and CHRISTOPHER WALTERS,<br><br>                              Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Vincent Lavanga ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against Avantax, Inc. ("Avantax" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of

the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Aretec Group, Inc. d/b/a Cetera Holdings ("Parent") through merger vehicle C2023 Sub Corp., a wholly owned subsidiary of Parent ("Merger Sub" and collectively with Parent, "Cetera"), as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all-cash merger transaction (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in an September 11, 2023 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Avantax's common stock will be converted into the right to receive $26.00 in cash, and the Proposed Transaction is valued in the aggregate at $1.2 billion. As a result of the Proposed Transaction, Avantax will become a wholly owned subsidiary of Parent.

3.     Thereafter, on October 6, 2023, in support of the Proposed Transaction, the Company and Cetera caused to be filed with the SEC a Form PREM14A attaching the Preliminary Proxy Statement in support of the Proposed Transaction, which was thereafter amended on October 16, 2023 with the filing of a Definitive Proxy Statement on form DEFM14A.

4.     The Proposed Transaction is unfair for a number of reasons. Notably, the Definitive Proxy Statement is materially deficient, depriving Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Definitive Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Avantax, provided by Avantax management to the Board and the Board's financial

advisor PJT Partners LP ("PJT Partners"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion(s) created by PJT Partners, if any, provided to the Company and the Board.

5.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

6.      Plaintiff is a citizen of North Carolina and, at all times relevant hereto, has been an Avantax stockholder.

7.      Defendant Avantax provides wealth management solutions to consumers, small business owners, tax professionals, financial professionals, and certified public accounting firms in the United States.  Avantax is incorporated in Delaware and has its principal place of business at 3200 Olympus Blvd., Suite 100, Dallas, TX 75019.  Shares of Avantax common stock are traded on the NASDAQ Exchange under the symbol "AVTA".

8.      Defendant Georganne Proctor ("Proctor") has been a Director of the Company at all relevant times and serves as Chairman of the Company Board.

9.      Defendant Mark Ernst ("Ernst") has been a director of the Company at all relevant times.

10.      Defendant Carol Hayles ("Hayles") has been a director of the Company at all relevant times.

11.      Defendant Kan Kotecha ("Kotecha") has been a director of the Company at all relevant times.

12.      Defendant Rick Leaman ("Leaman") has been a director of the Company at all relevant times.

13.     Defendant Tina Perry ("Perry") has been a director of the Company at all relevant times

14.     Defendant Karthik Rao ("Rao") has been a director of the Company at all relevant times

15.     Defendant Jana Schreuder ("Schreuder") has been a director of the Company at all relevant times

16.     Defendant Christopher Walters ("Walters") has been a director of the Company at all relevant times and serves as the Company's Chief Executive Officer ("CEO").

17.     Defendants identified in ¶¶ 8 - 15 are collectively referred to as the "Individual Defendants."

18.     Non-Party Parent is a privately held broker-dealer and investment company based out of San Diego, CA.

19.     Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as

to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NASDAQ Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

23.    Defendant Avantax provides wealth management solutions to consumers, small business owners, tax professionals, financial professionals, and certified public accounting firms in the United States.

24.    The Company offers an integrated platform of technical, practice, compliance, operations, sales, and product support tools that enable to offer tax-advantaged planning, investing, and wealth management services.

25.    The Company's recent financial results from the quarter preceding the announcement of the Proposed Transaction indicate sustained and solid financial performance. For example, in the report of the 2023 Q2 financial results dated August 9, 2023, the Company highlighted such financial milestones as total revenue of $186.9 million, a 15% year-on-year increase.

26.    Speaking on these positive results, Defendant and CEO Walters stated, "With two quarters behind us as a pure-play wealth management business, we have maintained strong operational performance across several key metrics. We continue to break records in revenue and advisory assets as a percentage of client assets. Also, during the quarter we delivered our sixth

consecutive quarter of net positive asset flows and we continue to see a stabilization in our financial professional count."

27.     Defendant Schelling continued noting the bright future prospects for the Company, ""I am also pleased to report that we completed our first acquisition of a wealth management firm not affiliated with Avantax and we look forward to others in the future."

28.     These results are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Avantax.

29.     Despite this upward trajectory, the Individual Defendants have caused Avantax to enter into the Proposed Transaction without providing requisite information to Avantax stockholders such as Plaintiff.

***The Flawed Sales Process***

30.     As detailed in the Definitive Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

31.     Notably, the Definitive Proxy Statement fails to provide an adequate recitation of what powers the Transaction Committee had to evaluate the transaction.

32.     Additionally, the Definitive Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Cetera, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Definitive Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

33.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

34.     On September 11, 2023, Avantax and Cetera issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **DALLAS and LOS ANGELES, September 11, 2023** -- Avantax, Inc. (NASDAQ: AVTA) (the "Company"), a leader in tax-focused financial planning and wealth management, and Cetera Financial Group ("Cetera"), the premier financial advisor Wealth Hub, announced today that Avantax and Aretec Group, Inc. d/b/a Cetera Holdings, the holding company of Cetera, have entered into a definitive agreement whereby Cetera Holdings will acquire all of the issued and outstanding equity of Avantax in an all-cash transaction valuing Avantax at approximately $1.2 billion, inclusive of Avantax's net debt.
>
> Following the closing, Avantax will become a standalone business unit within the Cetera family with 3,078 Avantax financial professionals, representing $83.8 billion in assets under administration and $42.6 billion in assets under management, as of June 30, 2023. Through the transaction, Cetera will retain Avantax's legal entities, core technology, product offerings and existing clearing and custody relationships.
>
> Holders of shares of Avantax common stock will receive $26.00 in cash per share, without interest and subject to required withholding taxes. The purchase price represents a premium of approximately 30% to the closing price of shares of Avantax common stock on September 8, 2023, the last full trading day prior to announcement of the transaction.
>
> "This transaction, upon closing, will deliver immediate cash value to Avantax stockholders. It is a result of Avantax's strategic transformation and value creation efforts, which, when combined with the sale of TaxAct in December 2022, has unlocked significant value for our stockholders," said Chris Walters, Chief Executive Officer of Avantax. "I am extremely grateful to our extraordinary community of financial professionals as well as the entire Avantax team for their unwavering focus and steadfast professionalism throughout our transformation. I am confident that this combination with Cetera is beneficial for Avantax, our financial professionals, employees and stockholders."
>
> "Over the past several years, Avantax's Board and senior management team have positioned the Company for long-term, sustainable growth through a simplified strategy, strengthened balance sheet and improved operational performance while exploring strategic opportunities for the future success of the business," said

Georganne Proctor, Avantax's Chair of the Board. "These efforts and the strength of our platform, people and financial professional community have not gone unnoticed. After carefully evaluating how best to maximize value for our stockholders, the Board unanimously determined that this transaction is in the best interests of Avantax and its stockholders. We also believe that this will position the business, our people, our financial professionals and our affiliates for the future."

"As we explored expanding Cetera's capabilities into wealth management and tax expertise as a core component of our growth strategy, it quickly became clear that Avantax was an ideal target and a powerful fit for our business," said Mike Durbin, CEO of Cetera Holdings. "As we enter Cetera's next phase of evolution, our five-year growth strategy is off to a terrific start. Avantax will significantly build out Cetera's capabilities in tax and wealth management. As we have said in the past, disrupting the market with expanding capabilities means more flexibility for advisors, and developing adjacent capabilities and channels expands our addressable market. This acquisition will activate this potential and represents an important milestone in Cetera's growth trajectory."

"The addition of Avantax Planning Partners, an award-winning employee-based RIA with over $7.6 billion in assets under management, will complement and strengthen Cetera's recently launched, highly successful succession solution offering and will deliver a combined offering that is even more compelling and impactful across all of the advisor communities," continued Mr. Durbin.

"This acquisition will establish a strategic relationship between Cetera and Fidelity, which will enable Cetera to expand further into a multi-custodial platform, enhancing Cetera's capabilities to provide tools and functionalities for its affiliated advisors. We are executing against our multi-custodian aspirations, and capturing new markets and adjacencies," said Adam Antoniades, CEO of Cetera Financial Group. "We will take a thoughtful, personalized, and proactive approach with Avantax to ensure Avantax's valued financial professionals aren't disrupted in any way. Our tax-centric Cetera Financial Specialist team has already created a formidable presence in our industry, and we are delighted that after the closing of this acquisition, we will be able to offer all of our advisors even greater opportunities to expand into tax and accounting."

**Transaction Details**

Avantax's Board of Directors unanimously approved the transaction, and the transaction is expected to close by the end of 2023, subject to stockholder approval, regulatory approvals, and other customary closing conditions. The transaction is not subject to any financing condition.

Upon completion of the transaction, Avantax will become a privately held company, and its common stock will no longer be traded on Nasdaq.

For further information regarding the terms and conditions contained in the definitive transaction agreement, please see Avantax's current report on Form 8-K, which will be filed with the U.S. Securities and Exchange Commission in connection with the transaction.

**Advisors**

PJT Partners is acting as financial advisor to Avantax, and Sidley Austin LLP and Haynes and Boone, LLP are serving as legal counsel to Avantax. Morgan Stanley & Co. is serving as financial advisor to Cetera. UBS Investment Bank and BMO Capital Markets served as co-advisors to Cetera. Willkie Farr & Gallagher LLP is serving as legal counsel to Cetera.

*Potential Conflicts of Interest*

35.    The breakdown of the benefits of the deal indicates that Avantax insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Avantax.

36.    Company insiders currently own large, illiquid portions of Company stock, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  The Definitive Proxy Statement provides the following but does not account for the merger consideration each of these amounts will be exchanged for upon the consummation of the Proposed Transaction.

| Stockholders, Directors, Nominees for Director and Named Executive Officers | Number of Shares of Common Stock Owned Directly or Indirectly | Number of Shares of Common Stock That Can Be Acquired Within 60 Days of October 1, 2023 | | Shares of Common Stock Beneficially Owned[1] | |
|---|---|---|---|---|---|
| | | Options | RSUs | Number | Percent of Class |
| **5% Stockholders** | | | | | |
| **BlackRock, Inc.** | 7,569,360 | — | — | 7,569,360[2] | 20.56% |
| 55 East 52nd Street, New York, NY 10055 | | | | | |
| **The Vanguard Group** | 5,292,463 | — | — | 5,292,463[3] | 14.38% |
| 100 Vanguard Blvd., Malvern, PA 19355 | | | | | |

| Directors | | | | |
|---|---|---|---|---|
| Mark A. Ernst | 95,311 | — | — | 95,311[4] | * |
| E. Carol Hayles | 13,851 | — | — | 13,851 | * |
| Kanayalal A. Kotecha | 15,698 | — | — | 15,698 | * |
| J. Richard Leaman III | 10,698 | — | — | 10,698 | * |
| Tina Perry | 22,740 | — | — | 22,740 | * |
| Georganne C. Proctor | 13,733 | — | — | 13,733 | * |
| Karthik Rao | 28,169 | — | — | 28,169 | * |
| Jana R. Schreuder | 36,482 | — | — | 36,482 | * |
| **Named Executive Officers** | | | | | |
| Ann J. Bruder | 243,415 | — | — | 243,415 | * |
| Curtis A. Campbell | 192,223 | — | — | 192,223 | * |
| Todd C. Mackay | 228,003 | — | — | 228,003 | * |
| Marc Mehlman | 135,803 | — | — | 135,803[5] | * |
| Christopher W. Walters | 698,856 | — | — | 698,856 | 1.90% |
| **All directors and current executive officers as a group (12 persons)** | 1,303,762 | — | 1,220[6] | 1,304,982 | 3.55% |

37.    Additionally, Company insiders currently own large amounts of company options, restricted stock units, and other equity awards, some of which may be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

**Non-Employee Director Equity Award Summary Table**

| Name | Unvested Company RSUs (#)[1] | Value of Unvested Company RSUs ($)[2] | Vested Company RSUs (#)[3] | Value of Vested Company RSUs ($)[2] |
|---|---|---|---|---|
| Georganne Proctor | 8,602 | 223,652 | 42,308 | 1,100,008 |
| Mark A. Ernst | 6,084 | 158,184 | 15,171 | 394,446 |
| E. Carol Hayles | 6,084 | 158,184 | 23,045 | 599,170 |
| Kanayalal A. Kotecha | 11,551 | 300,326 | 0 | 0 |
| J. Richard Leaman III | 11,551 | 300,326 | 0 | 0 |
| Tina Perry | 9,023 | 234,598 | 0 | 0 |
| Karthik Rao | 6,084 | 158,184 | 7,159 | 186,134 |
| Jana R. Schreuder | 6,084 | 158,184 | 0 | 0 |
| Mary S. Zappone[4] | 0 | 0 | 0 | 0 |
| Steven Aldrich[4] | 0 | 0 | 24,165 | 628,290 |

**Executive Officer Vested Equity Awards Summary Table**

| Executive Officers | Number of Vested Company Options[#][1] | Value of Vested Company Options[$][2] |
|---|---|---|
| Christopher W. Walters* | 459,932 | $ 3,938,625 |
| Marc Mehlman | 90,219 | $ 1,062,409 |
| Todd C. Mackay | 133,020 | $ 1,115,000 |
| Tabitha J. Bailey | 0 | $ 0 |
| Ann J. Bruder[2] | 146,589 | $ 814,482 |
| Curtis A. Campbell[3] | 130,620 | $ 933,994 |

**Executive Officer Equity Award Summary Table**

| Name | Company RSUs (#) | Value of Company RSUs ($)[1] | Company PSUs (#) | Value of Company PSUs ($)[2] | Unvested Company Options (#) | Value of Unvested Company Options ($)[3] |
|------|------|------|------|------|------|------|
| Christopher W. Walters | 121,625 | $ 3,162,250 | 404,738 | $ 10,523,188 | 265,343 | $ 1,615,303 |
| Marc Mehlman | 44,808 | $ 1,165,008 | 64,344 | $ 1,672,944 | 10,114 | $ 111,254 |
| Todd C. Mackay | 52,933 | $ 1,376,258 | 77,943 | $ 2,026,518 | 14,448 | $ 158,928 |
| Tabitha J. Bailey | 15,226 | $ 395,876 | 8,477 | $ 220,402 | 0 | 0 |
| Ann J. Bruder | 0 | 0 | 0 | 0 | 0 | 0 |
| Curtis A. Campbell | 0 | 0 | 0 | 0 | 0 | 0 |

39.     Moreover, certain employment agreements with certain Avantax executives entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

**Golden Parachute Compensation**

| Name | Cash ($)[1] | Equity ($)[2] | Pension/ NQDC ($) | Perquisites/ Benefits ($) | Tax Reimbursement[3] | Other | Total ($) |
|------|------|------|------|------|------|------|------|
| Christopher W. Walters | $ 6,264,613 | $ 15,300,741 | — | — | — | — | $ 21,565,354 |
| Marc Mehlman | $ 2,435,767 | $ 2,949,206 | — | — | — | — | $ 5,384,973 |
| Todd C. Mackay | $ 2,513,539 | $ 3,561,704 | — | — | — | — | $ 6,075,243 |
| Tabitha J. Bailey | $ 1,311,836 | $ 616,278 | — | — | — | — | $ 1,928,114 |
| Ann J. Bruder[4] | — | — | — | — | — | — | — |
| Curtis A. Campbell[5] | — | — | — | — | — | — | — |

40.     The Definitive Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

41.     Thus, while the Proposed Transaction is not in the best interests of Avantax, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Definitive Proxy Statement**

42.     On October 16, 2023, the Avantax Board and Cetera caused to be filed with the SEC a materially misleading and incomplete Definitive Proxy Statement that, in violation the Exchange Act, fails to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

_Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction_

43.     Specifically, the Definitive Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Definitive Proxy Statement fails to disclose:

    a.     Adequate information as to what powers the Transaction Committee created to run the sales process had;

    b.     Whether the confidentiality agreements entered into by the Company with Cetera differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

    c.     All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company

and potentially interested third parties throughout the sales process, including Cetera, would fall away;

d.      Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Avantax Financial Projections*

44.     The Definitive Proxy Statement fails to provide material information concerning financial projections for Avantax provided by Avantax management to the Board and PJT Partners, and relied upon by PJT Partners in its analyses.

45.     Notably, the Definitive Proxy Statement further reveals that, as part of its analyses, PJT Partners reviewed "certain internal financial analyses, estimates and forecasts relating to Avantax, including projections for fiscal years 2023E through 2028E that were prepared by or at the direction of the management of Avantax and approved for PJT Partners' use by the Board (collectively, the "Projections").

46.     The Definitive Proxy Statement should have, but fails to provide, certain information in the projections that Avantax management provided to the Board and PJT Partners. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

47.     With regard to *Initial Management Projections*, the Definitive Proxy Statement fails to disclose material line items, including the following:

a.  Adjusted EBITDA (Pre-SBC), including the underlying inputs, metrics, and assumptions used to determine the same, including specifically: net income, determined in accordance with GAAP, and the effects of discontinued operations, stock-based compensation, depreciation and amortization of acquired intangible assets, interest expense and other, net, acquisition and integration costs, contested proxy and other legal and consulting costs, executive transition costs, TaxAct transaction related costs, reorganization costs and income tax benefit.

48.    With regard to *Bidder Case Projections*, the Definitive Proxy Statement fails to disclose material line items, including the following:

a.  Adjusted EBITDA (Pre-SBC), including the underlying inputs, metrics, and assumptions used to determine the same, including specifically: net income, determined in accordance with GAAP, and the effects of discontinued operations, stock-based compensation, depreciation and amortization of acquired intangible assets, interest expense and other, net, acquisition and integration costs, contested proxy and other legal and consulting costs, executive transition costs, TaxAct transaction related costs, reorganization costs and income tax benefit.

49.    With regard to *August Management Projections*, the Definitive Proxy Statement fails to disclose material line items, including the following:

a.  Adjusted EBITDA (Pre-SBC), including the underlying inputs, metrics, and assumptions used to determine the same, including specifically: net income, determined in accordance with GAAP, and the effects of discontinued

operations, stock-based compensation, depreciation and amortization of acquired intangible assets, interest expense and other, net, acquisition and integration costs, contested proxy and other legal and consulting costs, executive transition costs, TaxAct transaction related costs, reorganization costs and income tax benefit;

b.  Adjusted EBITDA (Post-SBC), including the underlying inputs, metrics, and assumptions used to determine the same, including specifically: net income, determined in accordance with GAAP, and the effects of discontinued operations, depreciation and amortization of acquired intangible assets, interest expense and other, net, acquisition and integration costs, contested proxy and other legal and consulting costs, executive transition costs, TaxAct transaction related costs, reorganization costs and income tax benefit;

c.  Unlevered Free Cash Flow, including the underlying inputs, metrics, and assumptions used to determine the same, including specifically: the effects of financial professional loan amortization, the effects of cash taxes, change in net working capital, capital expenditures and certain other cash-like items, such as RIA acquisition spend and integration-related expenditure and financial professional loan originations;

d.  Non-GAAP Earnings Per Share, including the underlying inputs, metrics, and assumptions used to determine the same, including specifically: net income, determined in accordance with GAAP, the effects of amortization of acquired intangible assets, accretion of debt discounts, acquisition and integration costs, deferred taxes and tax adjustments for non-GAAP add backs;

e.  LTM Adjusted EBITDA (Post-SBC), including all specific underlying inputs, metrics, and assumptions used to determine the same; and

f.  The projected intangible amortization and associated tax benefit from the fiscal year ending December 31, 2029 until the fiscal year ending December 31, 2038, including all specific underlying inputs, metrics, and assumptions used to determine the same.

50.    The Definitive Proxy Statement fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

51.    The Definitive Proxy Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various sets of projections rely.

52.    Specifically, the Definitive Proxy Statement's failure to disclose substantive material projection data prevents Plaintiff from being fully informed as to the nature of the Proposed Transaction and preventing him from making a fully informed decision on whether to vote in favor of the same.

53.    This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

54.    Without complete and accurate projection data for Avantax being presented in the Definitive Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the value of the merger consideration, the accuracy of PJT Partners' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has

violated the Exchange Act by failing to include such information in the Definitive Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by PJT Partners*

55.     In the Definitive Proxy Statement, PJT Partners describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

56.     With respect to the *Selected Comparable Company Analysis*, the Definitive Proxy Statement fails to disclose:

     a.   The specific Companies compared;

     b.   The specific metrics for all compared companies;

     c.   The specific inputs and assumptions used to determine the utilized TEV / Adjusted EBITDA (Post-SBC) multiple range of 7.0x to 9.0x; and

     d.   The specific inputs and assumptions used to determine the utilized Price / Non-GAAP EPS multiple range of 11.5x to 13.5x.

57.     With respect to the *Selected Precedent Merger Analysis*, the Definitive Proxy Statement fails to disclose:

     a.   The specific date on which each precedent merger closed;

     b.   The aggregate value of each precedent merger analyzed;

     c.   The specific metrics for each precedent merger analyzed; and

d.  The specific inputs and assumptions used to determine the utilized TEV / LTM Adjusted EBITDA (Pre-SBC) multiple range of 8.5x to 10.5x

58.  With respect to the *Discounted Cash Flow Analysis*, the Definitive Proxy Statement fails to disclose:

a.  The range of terminal values for Avantax calculated;

b.  The specific Residual Value utilized, and the specific inputs and assumptions used to determine the same;

c.  The specific inputs and assumptions used to determine the utilized terminal TEV / LTM Adjusted EBITDA (Pre-SBC) multiple range of 9.0x to 11.0x;

d.  Avantax's marginal tax rate utilized;

e.  Avantax's existing intangible amortization schedule for the fiscal year ending December 31, 2029 until the fiscal year ending December 31, 2038, utilized;

f.  The specific inputs and assumptions used to determine the utilized discount rate range of 11.0% to 13.0%;

g.  Avantax's weighted average cost of capital utilized, and the specific inputs and assumptions used to determine the same; and

h.  The fully diluted number of shares of Avantax common stock as of September 5, 2023.

59.  With respect to the *Wall Street Research Analysts*' price targets, the Definitive Proxy Statement fails to disclose:

a.  The specific price targets analyzed;

b.  The specific analyst firms that created the utilized price targets; and

> c. The specific inputs and assumptions used to determine the utilized cost of equity of 12.09%.

60.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

61.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Avantax stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Definitive Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

62.     Plaintiff repeats all previous allegations as if set forth in full herein.

63.     Defendants have disseminated the Definitive Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

64.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection

of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

65.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

66.    The Definitive Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Definitive Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

67.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

68.    The Individual Defendants were at least negligent in filing a Definitive Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Definitive Proxy Statement not misleading.

69.     The misrepresentations and omissions in the Definitive Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

### SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

70.     Plaintiff repeats all previous allegations as if set forth in full herein.

71.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Definitive Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

72.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Definitive Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Definitive Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved,

and/or signed the Definitive Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

73.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Avantax's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Definitive Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Definitive Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

74.    The Individual Defendants acted as controlling persons of Avantax within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Avantax to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Avantax and all of its employees.  As alleged above, Avantax is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.    Enjoining the Proposed Transaction;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Directing the Individual Defendants to exercise their fiduciary duties to disseminate

a Definitive Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: October 18, 2023                          **BRODSKY & SMITH**

By:   *Evan J. Smith*
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*